```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION


Tammy J. Jones,                  :

        Plaintiff,               :

    v.                           :    Case No. 2:12-cv-110

                                 :    JUDGE MICHAEL H. WATSON
Commissioner of Social Security,      Magistrate Judge Kemp

        Defendant.               :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Tammy J. Jones, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed on September 23, 2009 and alleged that plaintiff became disabled on February 10, 2008.

After initial administrative denials of her applications, plaintiff was given a hearing before an Administrative Law Judge on July 27, 2011. In a decision dated September 1, 2011, the ALJ denied benefits. That became the Commissioner's final decision on December 15, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on April 17, 2012. Plaintiff filed her statement of specific errors on May 17, 2012. The Commissioner filed a response on June 18, 2012. No reply brief was filed, and the case is now ready to decide.

II.  The Lay Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 31 through 62 of the record. Plaintiff, who was 37

years old at the time of the hearing and attended school through the ninth grade, testified as follows.

Since filing her applications, plaintiff had looked for work and had been employed at a grocery store delicatessen as well as with the Census Bureau. The latter job ended because it was only temporary. The former job lasted two weeks, one of which was for training. She was terminated due to a situation in which a customer did not get waited on. Many years before, she had been employed at a United Dairy Farmers store, and after that she worked as a cashier, stocker, and in other positions at a grocery store. Her only other relevant employment was as a cashier in a department store.

Plaintiff testified that her primary problem was her heart condition. She began taking medication in 2005 for an irregular heartbeat and by 2009 had become so short of breath that she had to be hospitalized. She had since undergone surgery to implant a defibrillator. That has affected her ability to lift more than ten pounds. She also suffered from diabetes, and testified that she experiences dizziness, nausea, and sleepiness when her blood sugar was not well-controlled. Her lower back was also a problem and she had been depressed for a number of years. Her legs also would swell due to a change in her heart medication.

Plaintiff described her back pain as radiating into both hips and both legs. Her legs had given out on occasion. She stated that she slept very little due to bipolar disorder and had problems with focus, memory and concentration. She also said she heard voices daily and had long crying spells several times a month. Plaintiff also claimed to have difficulty being around or tolerating others without becoming impatient and angry. She acknowledged that the only pain medication she took was Tylenol.

In a normal day, plaintiff's activities included taking care of her three dogs, making phone calls, going to appointments, and

occasionally cooking or going grocery shopping.  She also read and watched television.  Most days, she was required to spend several hours with her legs propped up due to swelling.

### III.  The Medical Records

The medical records in this case are found beginning on page 227 of the administrative record.  The pertinent records can be summarized as follows.

Progress notes show that plaintiff had been treated over a period of time for severe idiopathic cardiomyopathy.  Notes also showed a history of depression and diabetes.  She was being treated for these conditions with medication and was generally seen every three months.  She did visit the emergency room once in 2009 complaining of back pain, and was discharged with medications.  Later the same year, she went to the ER twice, once with pneumonia and once for shortness of breath.  Ultimately, she was diagnosed with congestive heart failure with pleural effusions, but without lower extremity edema, and she was treated with diuretics and other medications.  (See Tr. 384-89).  Her ejection fraction at that time was 20-25%.

On January 6, 2010, Dr. Condon saw plaintiff for a consultative examination.  Her chief complaints were noted to be shortness of breath, congestive heart failure, and diabetes.  She described dizziness if she stood for 15-20 minutes.  Her peripheral pulses were 1/4 and a pulmonary function study was normal.  Dr. Condon thought her history was suggestive of nonischemic cardiomyopathy.  He thought she could perform sedentary work of a routine nature but should avoid repeatedly climbing steps or ramps or standing for more than 15-20 minutes at a time.  She also needed to avoid extremes of temperature and pulmonary irritants.  (Tr. 418-21).

Dr. Teague, a state agency reviewer, completed a residual functional capacity assessment form on January 19, 2010.  He

concluded that plaintiff could lift 20 pounds occasionally and ten frequently, could stand or walk for at least two hours in a workday, could sit for up to six hours, and could not climb ladders, ropes or scaffolds.  He believed she could frequently balance and occasionally climb ramps or stairs, stoop, kneel, crouch and crawl.  He would also have limited her exposure to hazards such as heights or machinery.  (Tr. 433-440).  Dr. Brock, another state agency reviewer, later affirmed this assessment.

In February, 2010, plaintiff had an internal defibrillator inserted.  Her preoperative and postoperative diagnoses continued to be cardiomyopathy.  Several months later she was described, from a cardiology point of view, as "reasonably stable."  (Tr. 518), and in October of that year, the shortness of breath she experienced from her cardiac condition was characterized as "mildly to moderately limiting."  (Tr. 575).  By May of 2011, she was "doing very well."  (Tr. 594).

Plaintiff was seen by Dr. Donaldson, a psychologist, for a consultative examination on March 16, 2010.  Her chief psychological complaints were bipolar disorder and depression. She reported problems getting along with others but did not believe that this problem had affected her work performance. During the interview, her affect was flat and her mood was anxious.  She reported crying spells and difficulty sleeping. She told Dr. Donaldson she had mood swings on a daily basis and also heard voices daily.  Dr. Donaldson diagnosed a generalized anxiety disorder and bipolar disorder with psychotic features and rated her GAF at 45-55.  He thought she should be able to follow one- or two-step job instructions and to perform repetitive tasks.  Her ability to relate to others was moderately limited, as was her ability to withstand the stress and pressure of everyday work.  (Tr. 492-95).  Dr. Lewin, a state agency reviewing psychologist, generally concurred with these findings,

stating that plaintiff could function in a routine setting without rapid changes so long as she was asked to do only simple tasks. She would function best away from others. (Tr. 497-513).

### IV. The Vocational Testimony

Ms. Kaufman, a vocational expert, also testified at the administrative hearing. Her testimony begins at page 62 of the administrative record. She characterized plaintiff's past work as ranging from light to heavy in exertional level, and as being either unskilled or semi-skilled.

Ms. Kaufman was asked some questions about a hypothetical person who was able to lift up to twenty pounds occasionally and could sit for up to six hours in a workday, and stand or walk up to four hours. That person could not climb ladders, ropes or scaffolds, could balance frequently and climb stairs, stoop, kneel, crouch or crawl only occasionally, and could not be exposed to moving machinery or unprotected heights. Additionally, that person could perform only simple, repetitive tasks in a routine setting not involving rapid changes in duties or processes and which involved only brief and superficial contact with others. Ms. Kaufman testified that such a person could not do any of plaintiff's past work. However, such a person who also was of plaintiff's age and had her educational background could do some light and sedentary jobs such as small product assembler, final assembler, packer, and table worker.

Ms. Kaufman was also asked whether there would be jobs for someone who was as limited as plaintiff described herself to be. She testified that such a person could not work competitively.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11 through 21 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff

met the insured requirements for disability insurance through March 31, 2011, but not thereafter.  Next, he found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of February 10, 2008 through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including idiopathic cardiomyopathy, diabetes mellitus, bipolar affective disorder and generalized anxiety disorder.  The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform light work except that she was limited to standing and/or walking for four hours in a workday.  Further, plaintiff could occasionally climb ramps and stairs but could not climb ladders, ropes, or scaffolds.  She could balance frequently and occasionally stoop, kneel, crouch and crawl.  She could not work at unprotected heights, and work around hazardous machinery. Finally, she could perform only simple, repetitive tasks in a routine setting not involving rapid changes in duties or processes and which involved only brief and superficial contact with others.  The ALJ accepted the vocational expert's testimony that someone with such limitations could perform some light and sedentary jobs such as small product assembler, final assembler, packer, and table worker, and that approximately 2,800 such jobs existed in the local economy and approximately 310,000 such jobs existed in the national economy.  As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

### VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff raises two primary issues.  First, she asserts that the ALJ did not properly

assess her residual functional capacity, failing to mention the findings of the consultative examiner and failing to include certain restrictions in the hypothetical question posed to the vocational expert.  She also argues that her credibility was not properly evaluated.  The Court reviews the administrative decision of a Social Security ALJ under this legal standard:

    <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

    In support of her first statement of error, plaintiff argues primarily that although the ALJ purported to give significant

-7-

weight to Dr. Condon's conclusions, he actually found that plaintiff's residual functional capacity was more accurately described by the state agency reviewer, who thought that plaintiff was capable of working at the light exertional level. The ALJ did find that plaintiff could do a reduced range of light work, with walking or standing limited to four hours a day instead of the six hours usually required for such work. Plaintiff contends that the ALJ did not adequately explain how the conflict between Dr. Condon's opinion and Dr. Teague's evaluation was resolved, and suggests that either Dr. Teague or the ALJ may have been unaware that Dr. Condon limited plaintiff to sedentary work.

    The Commissioner responds by pointing out that there was a slight conflict between the findings of these two physicians, but that it is the ALJ's prerogative to resolve conflicts in the medical evidence, and that there was a reasonable basis for resolving the conflict in favor of the slightly more optimistic assessment of Drs. Teague and Brock - namely, that Dr. Condon's findings (and there were not many positive findings from his examination) did not support a limitation to sedentary work, and that his opinion must have been based on plaintiff's own report of symptoms.  That report, in turn, was found by the ALJ not to be fully credible because it was not supported by or consistent with the objective medical evidence.

    The ALJ did not provide an overly detailed explanation for the reason that the opinions of Drs. Teague and Brock were credited in full and that Dr. Condon's opinion was "given great weight [only] to the extent that it is consistent with the above assessed residual functional capacity."  However, the ALJ did explain that the other doctors' opinions were "consistent with the medical evidence of record."  (Tr. 19).  An ALJ is permitted to make such resolutions of conflicting evidence, and there is no

specific requirement that this type of decision be set forth in the same type of detail required when rejecting the opinion of a treating source.  See, e.g., Denton v. Comm'r of Social Security, 2012 WL 1145962, *3 (E.D. Mich. April 5, 2012)("The ALJ is not required to discuss every piece of evidence when there is substantial evidence to reach the opposite conclusion").  And, of course, "[w]hen deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  Bass v. McMahon, 499 F.3d 506, 509 (6th cir. 2007).

   The major differences between these competing opinions are, as plaintiff points out, Dr. Condon's limitation of plaintiff to sedentary work and his view that she could not stand for more than fifteen or twenty minutes due to dizziness, that she should not work around unprotected heights, and that she should not be exposed to irritants or pollutants.  It is worth noting that this case would not have been decided differently had the ALJ limited plaintiff to sedentary work; the ALJ found, in accordance with the vocational expert's testimony, that plaintiff could perform a substantial number of sedentary as well as light jobs, and plaintiff is a younger individual who would not be considered disabled even if limited to sedentary work.  With respect to the other limitations recited in Dr. Condon's report, although, again, the ALJ did not directly express his reasons for not adopting them, because there is no requirement that he do so - especially where, as here, his discussion of the evidence makes clear that he was fully aware of and understood Dr. Condon's report - plaintiff's argument is, in essence, that a reasonable person could not have disregarded these restrictions because the medical evidence compelled a finding that they existed.  The short answer to that argument is that the medical evidence is not

so unequivocal; the standing limitation was based on plaintiff's own report of symptoms and not any objective evidence, and the other limitations either were derived from that self-report or not supported by any evidence that, for example, plaintiff had a breathing disorder that was aggravated by environmental factors as opposed to her cardiomyopathy.  The ALJ found no severe breathing disorder, and there is no objective evidence of one.  Under these circumstances, and given that the two state agency reviewers also concluded that these restrictions were not necessary, the ALJ's decision not to include them in the hypothetical question posed to the vocational expert has substantial support in the record.

    Plaintiff also takes issue with the mental component of the ALJ's residual functional capacity finding.  She argues that merely by limiting her to the performance of only simple, repetitive tasks in a routine setting not involving rapid changes in duties or processes, the ALJ did not adequately account for her documented deficiencies in the areas of concentration, persistence, and pace.  In particular, she notes that Dr. Lewin, the state agency reviewing psychologist, stated in her report that plaintiff could "concentrate short term."  That limitation, however, did not appear to factor into either the hypothetical question posed to the vocational expert or into the ALJ's ultimate conclusion about her mental residual functional capacity.  This error, she contends, would require a remand.

    There is some ambiguity in exactly what portion of Dr. Lewin's report the ALJ accepted.  At one point, the administrative decision recites that the residual functional capacity finding in that decision "accept[s] and adopt[s] the opinion of the ... (BDD) medical experts," including Dr. Lewin.  At another point, the decision states that Dr. Donaldson's report was given "great weight" to the extent that it is consistent with

the ALJ's residual functional capacity finding.  Dr. Donaldson's report is, in fact, consistent with a finding that omits any reference to the "concentrate short term" limitation; he found that plaintiff's "ability to perform repetitive tasks does not appear to be limited."  (Tr. 495).  Given that the ALJ could have resolved this fairly minor conflict in favor of Dr. Donaldson's views, and that it is not necessarily the case that a limitation on the ability to concentrate longer than the "short term" (whatever that may imply) is actually inconsistent with the ability to "function in a routine setting without rapid changes" - which is how Dr. Lewin described plaintiff's functional capacity, see Tr. 513 - any error in omitting this one restriction from the hypothetical question appears harmless, and any remand would not result in a different decision.  Cf. Wilson v. Comm'r of Social Security, 378 F.3d 541, 547 (6th Cir. 2004).  Plaintiff's first claim of error therefore lacks merit.

    Plaintiff's second statement of error deals with the way in which the ALJ evaluated her credibility.  She argues that the administrative decision fails to "build a bridge" between the medical evidence and the ALJ's credibility finding and that the ALJ engaged in a form of "reverse engineering" - determining first that plaintiff could work, and then "looking for a credibility analysis that would support this conclusion," see Plaintiff's Statement of Errors, Doc. 13, at 14 - which, according to plaintiff, is an analytical method condemned by, among other decisions, Bjornson v. Astrue, 671 F.3d 640 (7th Cir. 2012).  The Commissioner's response to this argument does not address the Bjornson case, but point out that the ALJ is the primary decider on issues of credibility, that the ALJ fully discussed plaintiff's testimony, and that his resolution of any credibility issues is reasonably supported by the record and consistent with Social Security Ruling 96-7p.

Bjornson, a decision written by Judge Posner, and which took issue with the use of what he described as "a piece of opaque boilerplate" (which can also be found in the ALJ's decision in this case), rests on the premise that the language in that piece of boilerplate "implies that ability to work is determined first and is then used to determine the claimant's credibility." Id. at 645. This, however, "gets things backwards," id., because it suggests that the ALJ first determined the claimant's ability to work without taking the credibility of his or her symptoms into account, and then rejected any testimony which would be inconsistent with the ability to work simply because the decision that the claimant can work has already been made. According to the Bjornson court, such an approach is inconsistent with SSR 96-7p(4). However, it appears that the ultimate decision in that case, which was to reverse and remand, was based not solely upon the use of this boilerplate or "template" language, but on the ALJ's failure to marshal adequate support for his finding that the claimant was not disabled when both the medical evidence and the claimant's own testimony strongly suggested otherwise.

Bjornson does not appear to have been cited by any decision from the Sixth Circuit Court of Appeals. This Court has cited it once, in Williams v. Astrue, 2012 WL 4364147 (S.D. Ohio September 24, 2012)(Watson, J.), concluding that although the ALJ in that case used the same language, "unlike the ALJ in Bjornson the ALJ in Plaintiff's case goes on to explain the credibility determination in greater detail," and affirming the ALJ's credibility finding because it was "supported by substantial evidence in the record." Williams, supra, at *2-3. That approach is consistent with the way in which the Court of Appeals for the Seventh Circuit has applied Bjornson; for example, in Filus v. Astrue, ___ F.3d. ___, 2012 WL 3990651, *4 (7th Cir. September 7, 2012), that court said "[i]f the ALJ has otherwise

explained his conclusion adequately, the inclusion of this language can be harmless." Consequently, this Court will make the same inquiry here, examining the reasons given by the ALJ for finding plaintiff less than fully credible, and deciding if the record provides support for that finding.

SSR 96-7p requires an ALJ, when assessing a claimant's credibility, to "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record," and cautions that "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." While the boilerplate language which appears in the ALJ's decision does cite, as a factor, inconsistencies between plaintiff's testimony and the objective medical record, that is not the only matter which the ALJ considered. The ALJ specifically took into account the conservative nature of her care, especially with respect to mental health issues, her daily activities, the fact that she takes only Tylenol to address her back pain, and the fact that no physician concluded that she was disabled. See TR. 17-18. Although, as plaintiff argues, there are differences between being able to perform normal daily activities such as, in this case "driving an automobile, caring for pets, reading, using a computer and a cell phone, and keeping ... appointments," and being able to work on a sustained basis, such activities may legitimately be considered by an ALJ, along with other factors, as evidence which can counter a claim of totally disabling symptoms. See, e.g., Foreman v. Commissioner of Social Sec.,

-13-

2012 WL 1106257 (S.D.Ohio Mar 31, 2012)(Watson, J.), citing Walters v. Comm'r of Social Security, 127 F.3d 525, 531 (6th Cir.1997) and Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir.1994).  That is what occurred here, and the Court is not free to substitute its judgment for that of the ALJ on this fact-intensive issue.  For that reason, plaintiff's second claim of error also lacks merit.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v.

<u>Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
