UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tammy J. Jones,

    **Plaintiff,**

v.

Commissioner of Social Security,

    **Defendant.**

Case No. 2:12–cv–0110

Judge Michael H. Watson
Magistrate Judge Kemp

## OPINION AND ORDER

On October 30, 2012, the Magistrate Judge issued a Report and Recommendation recommending that the Court overrule the statement of errors filed by Plaintiff Tammy J. Jones and enter judgment in favor of Defendant Commissioner of Social Security. Plaintiff has filed a timely objection to that recommendation. For the following reasons, the Plaintiff's objection will be overruled, and this case will be dismissed.

## I. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b) (1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review of the underlying decision "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## II. FACTS

Plaintiff does not object to the Report and Recommendation's summary of the testimony at the administrative hearing, the medical evidence, and the administrative decision, so that summary will be repeated here only briefly. Plaintiff claimed a disability beginning on February 10, 2008. She was 37 years old at the time of the hearing, had attended school only through the ninth grade, and had previously worked as a grocery store or convenience store clerk or stock person and as a cashier at a department store. She testified that she had a heart condition, shortness of breath, diabetes, and low back pain radiating into both hips and legs. She also told the ALJ she suffered from bipolar disorder with accompanying memory and concentration problems and anxiety or irritation when around other people.

The only treating physician's opinion in this case is from Dr. Nicholas Davakis, M.D., who treated Plaintiff for non-specific and multi-factorial cardiac complaints. Dr. Davakis' opinion was that Plaintiff is "unable to participate in any type of significant physical exertion." Rec. 18, ECF No. 12.

Dr. Condon, a consultative examiner for the state, examined Plaintiff and concluded that, due to Plaintiff's history of nonischemic cardiomyopathy, she was limited to sedentary work of a routine nature, with some additional restrictions on climbing steps or ramps, standing (specifically he noted she was limited to standing for 15 to 20 minutes at a time), and being exposed to extremes of

temperature or pulmonary irritants.

Dr. Donaldson, a psychologist and consultative examiner for the state, found that Plaintiff suffered from a generalized anxiety disorder and bipolar disorder with psychotic features, had a global assessment of functioning score ("GAF") of 45–55, and was moderately impaired in her ability to deal with work stress. He also thought she could follow one- or two-step job instructions and could perform repetitive tasks even though she was also moderately limited in her ability to relate to others. Dr. Lewin, a state agency reviewer, reached a similar conclusion.

Dr. Teague, a state agency reviewer, completed a residual functional capacity assessment and concluded that Plaintiff could do light work and that, *inter alia*, she could stand or walk for four hours in a workday and should have limited exposure to hazards such as heights or machinery. Dr. Brock, another state agency reviewer, affirmed this assessment.

The ALJ essentially adopted all these findings, although the ALJ agreed with Dr. Teague that Plaintiff could do a limited range of light work if she did not have to stand or walk for more than four hours total in a work day. A vocational expert testified that someone with Plaintiff's physical capacity and who could also do only simple, repetitive tasks in a routine setting which did not involve either rapid changes in duties or processes or more than brief or superficial contact with others could work as a small product assembler, final assembler, packer, or

table worker. Based on this testimony, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

### III. DISCUSSION

Plaintiff raises two specific issues in her objections to the Report and Recommendation, which encompass many of the same issues she raised in her Statement of Errors. She contends, first, that the ALJ's residual functional capacity finding was not supported by substantial evidence because the ALJ did not resolve a conflict in the medical evidence; did not include certain limitations in his hypothetical to the vocational expert; and fails to mention limits on Plaintiff's ability to stand, to be exposed to certain environmental conditions, and to concentrate or work at an acceptable pace. Second, she argues that her credibility was not properly assessed because the ALJ relied only on evidence of Plaintiff's activities of daily living and disregarded other evidence which is relevant to a credibility determination. For the following reasons, the Court finds no merit in either of these arguments.

The Magistrate Judge found that the ALJ had resolved any conflicts in the medical evidence. In concluding that the ALJ acted within the allowable scope of discretion in resolving conflicts in the evidence, the Report and Recommendation stated:

> An ALJ is permitted to make such resolutions of conflicting evidence, and there is no specific requirement that this type of decision be set forth in the same type of detail required when rejecting the opinion of

a treating source. *See, e.g., Denton v. Comm'r of Social Security*, 2012 WL 1145962, *3 (E.D. Mich. April 5, 2012) ("The ALJ is not required to discuss every piece of evidence when there is substantial evidence to reach the opposite conclusion"). And, of course, "[w]hen deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Report and Recommendation 8–9, ECF No. 15. Plaintiff does not argue that this is an inaccurate statement of the law, but contends that the ALJ did not actually resolve conflicts in the medical evidence about whether she was capable of sedentary or light work and how long she could stand or walk in a work day.

The Court agrees with the Magistrate Judge's conclusion that the ALJ resolved the conflict by accepting the opinions of the two state agency reviewers, Drs. Teague and Brock, to the extent that their opinions differed slightly from Dr. Condon's. The ALJ stated a specific limit on how much of Dr. Condon's opinion he accepted; he gave it great weight only to the extent that it was consistent with the other residual functional capacity findings. This choice was within his discretion, and Plaintiff does not argue otherwise. Her actual argument—that the ALJ did not actually appreciate and resolve this conflict in the evidence—is not borne out by the record.

Plaintiff also contends that important information was left out of the hypothetical given to the Vocational Expert. Specifically, she argues Dr. Condon's conclusion that she could only stand 15–20 minutes and Dr. Lewis'

opinion she could only "concentrate short term" should have been included. Plaintiff argues that had this information been included, it could well have affected the testimony about what jobs she could do.

The Court agrees with the Magistrate Judge that the ALJ did not improperly omit reference to Plaintiff's limits on standing or problems with concentration when posing a hypothetical question to the vocational expert. As mentioned above, the ALJ rejected Dr. Condon's conclusion that Plaintiff could only stand 15–20 minutes before getting dizzy. This is within the discretion of the ALJ. In relation to her concentration, the ALJ's hypothetical included the limitation to performance of simple, routine tasks in a setting that did not involve changes in the work processes or any significant distraction by co-workers, supervisors, or the public. That is precisely the type of work Dr. Lewin said Plaintiff could perform. The "concentrate short term" language simply explained why it was that Plaintiff was limited to such work. The phrase "concentrate short term" does not, as Plaintiff argues, impose a limit on the frequency with which Plaintiff could concentrate. Accordingly, the omissions from the hypothetical are not error.

Finally, Plaintiff contends the ALJ's report was not based on substantial evidence because it did not address her environmental limitations or her limitations in concentration, persistence, and pace.

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: 'an ALJ can consider all the evidence without directly addressing in his written

> decision every piece of evidence submitted by a party. Nor must an ALJ make explicit findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.'

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). The ALJ noted, "[s]he should avoid all exposure to workplace hazards such as dangerous machinery and unprotected heights" and explained her limitations due to her concentration deficiencies, as described above. By failing to mention Dr. Condon's conclusions that she was limited to standing for 15 to 20 minutes at a time and should be limited in her exposure to extremes of temperature or pulmonary irritants, the ALJ implicitly rejected those conclusions. It is within the discretion of the ALJ to weigh the evidence. Since Dr. Condon was not a treating physician, the ALJ need not explain the rejection of his conclusions in great detail. *See Denton,* 2012 WL 1145962, at *3.

In her second objection, Plaintiff takes issue with the way in which the ALJ assessed her credibility. Again, however, the record does not bear out her claim of error. The ALJ did not simply rely on her activities of daily living—which included driving, caring for three dogs, reading, using her computer and cell phone, and going to medical appointments, and which showed the ability to function at some level—but also explicitly considered the nature of the treatment she received, the medication she took, and the absence of any opinion from any

physician that she was disabled. Although Plaintiff argues that the absence of opinions about disability are irrelevant because "Physicians are asked to give their opinions on the functional limitations posed by a claimant's impairments, not whether or not a claimant is disabled," Objection 6, ECF No. 16, the fact that every physician thought that Plaintiff had more functional capability than she admitted to in her testimony is clearly a factor which the ALJ was entitled to consider. The Court finds no error in the way in which the ALJ addressed the issue of credibility and defers to the conclusions reached by the ALJ on this point. See, e.g., Jones v. Comm'r of Social Security, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference" and "we are limited to evaluating whether or not the ALJ's explanations for partially discrediting [the Plaintiff] are reasonable and supported by substantial evidence in the record"). Consequently, neither of Plaintiff's objections persuade the Court that the Report and Recommendation erroneously determined the issues in this case in the Commissioner's favor.

## IV. CONCLUSION

For all of these reasons, and after a *de novo* review of those portions of the Report and Recommendation to which the Plaintiff objected, the Court **OVERRULES** the objections, ECF No. 16, and **ADOPTS AND AFFIRMS** the Report and Recommendation, ECF No. 15. The plaintiff's statement of specific errors, ECF No. 13, is **OVERRULED**. The Clerk is directed to enter judgment in

favor of the Commissioner. This case is **DISMISSED.**

**IT IS SO ORDERED.**

*[signature]*
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT